**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and PINSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.

https://www.gaappeals.us/rules

In the Court of Appeals of Georgia

**January 11, 2022**

A21A1195. In the Interest of C. B., a child (mother).

MERCIER, Judge.

The mother of C. B. appeals from the juvenile court's order finding C. B. dependent and awarding temporary custody of C. B. to the Georgia Department of Human Services through the DeKalb County Division of Family and Children Services ("DFCS"). Because the evidence does not support the dependency determination, we reverse.

On appeal from an order adjudicating a child dependent, "we view the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found clear and convincing evidence of dependency."

*In the Interest of A. W.*, 340 Ga. App. 406, 407 (797 SE2d 655) (2017) (citation and punctuation omitted). In conducting this review, "we do not weigh the evidence or determine the credibility of witnesses; instead we defer to the juvenile court's findings of fact and affirm unless the appellate standard is not met." Id. (citation and punctuation omitted).

The record shows that C. B. was born on July 18, 2020, to a 17-year-old mother who was in foster care at the time. Approximately three weeks later, on August 10, 2020, DFCS filed an emergency, ex-parte request to place C. B. in protective custody, alleging that C. B. was dependent, had been neglected, and needed protective custody on the following grounds: (1) the mother had taken C. B. out into public during the pandemic and before C. B. had received all of her vaccinations; (2) the mother had refused to enter a foster home conducive to a parenting teenager; (3) DFCS had located a fictive kinship placement for C. B., but the mother had "made threats to hurt the kinship provider;" (4) the mother had two other children in DFCS custody and had not completed the case-plan requirements relating to those children; (5) the mother had a diagnosed mental health history and "refus[ed] to take her medication;" and (6) the mother was a flight risk from foster care. The trial court granted

2

immediate protective custody to DFCS, which then filed a dependency complaint raising the same grounds.

Following a preliminary protective hearing on the complaint, the juvenile court awarded DFCS temporary custody of C. B. pending the filing of a formal dependency petition. DFCS subsequently filed a petition alleging essentially the same grounds for dependency, and an adjudicatory hearing was held on November 16, 2020. At the hearing, C. B.'s DFCS case manager testified that, although DFCS had temporary custody of C. B., the mother lived in the same foster home as C. B. and took care of her daily needs. The case manager described C. B. as healthy, happy, and up-to-date on all medical appointments, and she noted that DFCS had received no reports that the mother had abused, harmed, or abandoned C. B. Another DFCS employee indicated that when C. B. was taken into protective custody, the mother had been in the same foster care placement for nine or ten months, had not attempted to run away from that home, and had been actively engaged in individual therapy and parenting classes.

The case manager further testified that the mother consistently visited with her older children (who were in DFCS custody) and was working on her case-plan goals relating to those children. The mother was compliant with her medication and only

stopped taking medication while pregnant with C. B. According to the case manager, the mother was not doing well in school. But she attended classes and planned to improve her grades through tutoring. She was not employed and remained dependent on DFCS for financial help to take care of C. B. The case manager admitted, however, that the mother had arranged to babysit for income and that because the mother was herself a foster child, DFCS was "obligated to maintain a placement for her" where she could live with C. B. The mother received assistance for C. B.'s needs through the Women, Infants, and Children ("WIC") program. And C. B.'s father testified that he was employed and able to assist the mother financially in caring for C. B. Ultimately, the case manager agreed that the mother "ha[d] been providing for [C. B.] and [was] able to continue to provide for [C. B.]." The case manager also testified that DFCS did not have "any safety concerns related to [C. B.] continuing in the mother's care."

The mother confirmed at the hearing that she was currently on medication for her mental health issues and had been taking the medication regularly since receiving an updated psychological assessment following C. B.'s birth. Regarding the alleged threats to the individual DFCS had proposed as "fictive kin" for C. B., the mother testified that she and the individual had disagreed over which formula should be

given to C. B., and the mother told the individual to "get out of [her] face." According to the mother, "nothing else" happened. DFCS presented no other admissible evidence regarding this incident.[1] Moreover, the only information DFCS offered about the mother taking C. B. out in public during the pandemic was that, on one occasion, the mother and her foster mother took C. B. to a store to purchase necessary baby supplies, then picked up a to-go order from a restaurant.

The child advocate attorney who represented C. B. asserted at the hearing that C. B. was not dependent. The Court-Appointed Special Advocate assigned to the case agreed that C. B. should be returned to the mother's custody, but suggested that a protective order be issued requiring the mother to follow certain procedures in caring for C. B. Despite these recommendations, the juvenile court found C. B. dependent and transferred custody to DFCS in an order entered on December 23, 2020.[2]

A "[d]ependent child" is one who "(A) [h]as been abused or neglected and is in need of the protection of the court; (B) [h]as been placed for care or adoption in violation of law; or (C) [i]s without his or her parent, guardian, or legal custodian."

---

[1] The juvenile court excluded as hearsay certain evidence that DFCS tried to present.

[2] The order was signed on December 16, 2020 (nunc pro tunc to November 16, 2020), and entered on December 23, 2020.

5

OCGA § 15-11-2 (22). The dependency allegations in this case focus on neglect, and, more specifically, the mother's alleged "failure to provide proper parental care or control, subsistence, education as required by law, or other care or control necessary for a child's physical, mental, or emotional health or morals." OCGA § 15-11-2 (48) (A). As the party bringing the dependency petition, DFCS bore the burden of proving neglect by clear and convincing evidence. See *In the Interest of L. K.*, 353 Ga. App. 855, 862 (840 SE2d 76) (2020).

At the November 2020 dependency hearing, DFCS argued that the juvenile court's dependency determination should be based on the circumstances that existed in August 2020, when C. B. initially came into DFCS care. We disagree. As we recently explained:

> [O]nly under compelling circumstances that are found to exist by . . . clear and convincing proof may a court sever, even temporarily, the parent-child custodial relationship. This is because the right to the custody and control of one's child is a fiercely guarded right in our society and in our law. Indeed, as our Supreme Court recently emphasized, the right of familial relations is among the inherent rights that are derived from the law of nature. And because of the sacred right at stake in custody proceedings, generally, the record must contain evidence of *present dependency*, not merely past or potential future dependency.

6

*In the Interest of L. K.*, supra at 861-862 (citations and punctuation omitted; emphasis supplied). See also *Mashburn v. Mashburn*, 353 Ga. App. 31, 45 (1) (a) (ii) (836 SE2d 131) (2019) ("In cases involving parental custody of a child, the question is not whether the child was in danger of harm at the time of the initial or temporary custody order. Instead, the question is whether the child would suffer harm if custody were returned to the parent as of the date of the final order.").

DFCS did not offer clear and convincing evidence of present dependency. Despite the allegations in the dependency petition, the undisputed evidence showed that the mother recommended her medication after C. B.'s birth, was compliant with her medication requirements, and was attending therapy. Although she had taken C. B. out into public during the pandemic one time to secure baby supplies and pick up a to-go food order, DFCS admitted that she did not do so regularly. The mother had been in a stable foster home for months and, at the time of the hearing, was living in a foster placement with C. B., taking care of her baby's needs. The mother was not employed, but she was attending school, had babysitting opportunities, and, according to the DFCS case manager, had been and was able to provide for C. B. DFCS offered no evidence that the mother had actually threatened the individual

7

proposed as fictive kin. And she was diligently working on the case plan goals relating to her two older children, whom she visited regularly.

An adjudication of present dependency must be based on a finding of parental unfitness. See *In the Interest of L. K.*, supra at 862 (citation and punctuation omitted). In this context, "parental unfitness" involves "intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child." Id. (citation and punctuation omitted). None of the evidence presented demonstrated current neglect, a lack of care, or a present dependency. Accordingly, we reverse the juvenile court's December 23, 2020 order adjudicating C. B. dependent and transferring temporary custody to DFCS. See id. at 863-864 (reversing dependency finding where DFCS failed to present clear and convincing evidence of present dependency at the adjudication hearing); *In the Interest of A. W.*, supra at 413 (1) (b) (reversing dependency finding; although evidence showed that mother had used methamphetamine before the child was removed from her home, DFCS offered "no evidence that the mother failed to provide adequate food, shelter, or education" to the child); *In the Interest of A. J. H.*, 325 Ga. App. 848, 853 (755 SE2d 241) (2014) ("Although the evidence showed that the mother's conduct in keeping her home and caring for the child may not have been

8

exemplary, it failed to show by clear and convincing evidence that her conduct has been below the requisite standard such that the courts should intervene and remove the child from her custody.").

*Judgment reversed. Dillard, P. J., and Doyle, P. J., concur.*